# Exhibit 29:

# FBI Report dated 3/2/10 (Excerpt: Discovery 2: 17-18)

Serial 37.TXT

UNCLASSIFIED

FEDERAL BUREAU OF INVESTIGATION
CHS REPORTING DOCUMENT

Form Classification:          UNCLASSIFIED
Source Id:
Date:                         2010-03-02
Case Agent Name:              Hartman,Samuel  T.
Field Office:                 Chicago
Squad:                        CT III

Date of Contact:              2010-02-26
Participants/Witnesses:       SA Robert D. Simmons


Type of Contact:              In Person
Location
Country:                      UNITED STATES
City:                         Downers Grove
State:                        Illinois
Date of Report                2010-03-01

Substantive Case File Number:

Source Reporting:


  On 02/26/2010,          , a confidential human source (CHS) not in a position
to testify and with good access whose reporting has been corroborated in the
past provided the following information:


  CHS reported that CHS met with Khalil Khalil a couple of weeks ago. Khalil
asked CHS about CHS's arrest that took place in late January. CHS explained
that he/she has not told anyone about the arrest except the FBI. CHSthinks that
Khalil found out through a              Last Name Unknown (LNU), Chicago
Police Department, 17th District. CHS claims that              Khalil's
inside connection to the



REDACTED



REDACTED



Page 1

Hassoun-2- 000000017

Serial 37.TXT

CHS advised that Khalil got rid of SAMI HASSOUN (SAMI) from the Nazareth Sweets Shop (Sweet Shop), because SAMI knew too much. SAMI had signed for over 1,000 UPS packages while working at the Sweets Shop and knew what was in some of them. CHS reported that Khalil would leave the Sweet Shop whenever UPS packages would come.

Khalil hired an Iraqi Sunni female to replace SAMI at the Sweets Shop. CHS advised that this Unknown Female (UF) loves Saddam Hussein. CHS reported that the Sweets Shopwould probablynottake a personal check as a form of payment, unless its the only form of payment on a patron of the Shop. Khalil may have or is trying to sell the Sweets Shop for $350,000. The shop banks at Fifth Third Bank on Lincoln and Kedzie Ave. Khalil has a hard time with getting credit cards, because he has bad credit.

CHS advised the following about SAMI's drug dealing. SAMI has not dealt Heroin yet, but CHS said he/she would show SAMI how if need be. SAMI will go after whatever drug will make him money or whatever CHStells SAMI hecan make money with. SAMI and CHS never discuss any business (i.e. drugs, Hizballah, etc..) over the phone, it is always in person. Sometimes they would talk in the Sweets Shop and sometimes at a coffee shop. SAMI normally does his deals at night. SAMI does not have regular customers or a regular dealing spot. Sometimes the CHS knows when a deal is going to take place, but rarely knows where. SAMI received 3,000 pills from the 5 Unidentifiable Males (UM)that visited from Detroit last week. He has about 1,000 pills remaining that he will sell for about $3 a pill. CHS also advised that SAMI uses multiple banks (Citi, Bank of America, and Chase).

Writer's Note: SA Hartman and SA Simmons discussed CHS's reporting on 03/01/2010 and that CHS is or is close to committing entrapment with SAMI. CHS was admonished on 01/27/2010 for participating in Unauthorized Illegal Activity. During the admonishments, it was emphasized not to encourage SAMI to get involved in illegal activity. CHS will continually be reminded at each meet to ensure CHS understands his/her role as a CHS. End Note.

Currently, SAMI has gotten hiredas a Cashier at Sanabel Bakery at 4213 N. Kedzie Ave, which is owned by a Lebanese man named Pierre LNU.

Writer's Note: Open source checks show that Sanabel Bakery is located at 4253 N. Kedzie Ave, Chicago, IL.IL Secretary of Statechecks reveal that the owner is Pierre Mounsef. End Note.

CHS went by           with           Located at this address is a food market on the 1st floor and a school on the second floor. Khalil and SAMI have both told CHS that Al-Qaedaruns the market and school. CHS went inside one time and saw 4 middle eastern UMs (2 Palestinians UMs and 2Pakistanis UMs)traditionally dressed with long beards. when CHS looked into the room these men were in, the door was closed so CHS could no longer see them.

Hassoun-2- 000000018

# Exhibit 30:

# FBI Reports dated 5/13/10 & 6/3/10
# (Discovery 2:32–33)

Serial 55.TXT

UNCLASSIFIED

FEDERAL BUREAU OF INVESTIGATION
CHS REPORTING DOCUMENT

Form Classification:            UNCLASSIFIED
Source Id:
Date:                           2010-05-13
Case Agent Name:                Hartman,Samuel  T.
Field Office:                   Chicago
Squad:                          CT III

Date of Contact:                2010-05-13
Participants/Witnesses:         SA Dana M. Cross


Type of Contact:                In Person
Location
Country:                        UNITED STATES
City:                           Chicago
State:                          Illinois
Date of Report                  2010-05-13

Substantive Case File Number:

Source Reporting:


On 05/13/2010,a Confidential Human Source (CHS), with good access, much of
whose reporting has been corroborated, provided the following information:


After the New York Times Square failed bombing attempt, SAMI SAMIR HASSOUN
(SAMI) claimed to the CHS that he could make a bomb, big or small, out of
baking soda. CHS asked how he knew how to do this, and SAMI told him he was
trained in Africa and Beirut about 4 years ago. In addition, SAMI claimed he
was able to make a gun out of two pieces of wood, a spring, anda bullet.


CHS advised that KHALIL KHALIL asked SAMI for some help. SAMI told CHS that
KHALIL had asked SAMI to assist in sticking up a place (NFI). KHALIL has
already paid SAMI $1,000 up front for the job, however, SAMI has yet to find
out all of the details of the stick up.


UNCLASSIFIED

Page 1

Serial 56.TXT

UNCLASSIFIED

FEDERAL BUREAU OF INVESTIGATION
CHS REPORTING DOCUMENT

Form Classification:             UNCLASSIFIED
Source Id:
Date:                            2010-06-03
Case Agent Name:                 Hartman,Samuel  T.
Field Office:                    Chicago
Squad:                           CT III

Date of Contact:                 2010-06-02
Participants/Witnesses:          TFO Angel Lorenzo


Type of Contact:                 In Person
Location
Country:                         UNITED STATES
City:                            Chicago
State:                           Illinois
Date of Report                   2010-06-03

Substantive Case File Number:

Source Reporting:


 On 06/02/2010,a Confidential Human Source (CHS), with good access, much of
whose reporting has been corroborated, provided the following information:


 CHS advised that SAMI SAMIR HASSOUN (SAMI) wanted to start a revolution. SAMI
claimed to have been doing research on the internet of Mayor Daley to try and
find a weak spot in his daily schedule. He has tried to locate routes Mayor
Daley took on a daily basis or restaurants he frequently visitedto try and
establish the best point to get to him. SAMI bragged aboutthemultiple file
folders he maintains on Mayor Daley and he continued to brag about his skills
using a compass and protractor to map distances and times on a Chicago city
map.


 CHS asked SAMI what he planned on doing and he stated that depended on how
much money he gets from the highest bidder. SAMI said he doesn't have support
yet (meaning from Al-Qaeda, Hizballah, or anyone willing to pay him), but he
has two friends, Unidentified Males (UMs), that are willing to help him. SAMI
went on to explain that thetype of attackdepends on how much money he gets.
SAMI presented 4 ideas to CHS: he is willing to put a bomb downtown Chicago for
$20,000, poison the water supply, flood the city, and would try to shut down
the electrical grid. CHS inquired if SAMI had any of the materials to conduct
any of the proposed plans and SAMI said no. He then askedCHS if he/she would be
able to get materials, whether it be for a bomb, or a virus for biological
weapons.


UNCLASSIFIED

Hassoun-2- 000000033

# Exhibit 31:

# FBI Report dated 2/16/10 (Excerpt: Discovery 2:13-14)

Serial 32.TXT

UNCLASSIFIED

FEDERAL BUREAU OF INVESTIGATION
CHS REPORTING DOCUMENT

Form Classification:              UNCLASSIFIED
Source Id:
Date:                             2010-02-16
Case Agent Name:                  Hartman,Samuel T.
Field Office:                     Chicago
Squad:                            CT III

Date of Contact:                  2010-02-16
Participants/Witnesses:           None


Type of Contact:                  Telephonic
Location
Country:
City:
State:
Date of Report                    2010-02-16

Substantive Case File Number:

Source Reporting:


  On 02/16/2010,          , a confidential human source (CHS) not in a position
to testify and with good access whose reporting has been corroborated in the
past provided the following information:


  CHS confirmed identifying information for SAMI HASSOUN: home address of 4720
N. Kedzie Ave., Chicago, IL, and his personal vehicle is aGold Honda with IL
license plate H87-8792.


  CHS met with SAMI on 02/15/2010. SAMItold CHS that within thelast two weeks he
dealt over 10 kilos of Cocaineat $25,000 a kilo. SAMI also toldCHS that hegave
5,000 Vicodin pills toan Unidentified Male (UM is known to SAMI, notCHS) from
the south side. SAMI and the UM met at Khalil Khalil's storage location at 3366
N. Kedzie Ave, Chicago, IL to exchange the Vicodin pills. The storage unit
number is 330 331.


Writers Note: Open source checks show that the business Lock Up Self Storage is
located at 3366 N. Kedzie Ave, Chicago, IL. End Note.


On 02/12/2010, writer showed CHSa mug shot,andat that time, CHS stated he/she
had never seen them before. Today, CHS advised writer thatCHS had seenthe guy
(known to writer as        ) in the mug shot at a Hookah Lounge on
Saturday 02/13/2010 near theSweetsshop located at 4638 N. Kedzie Ave, Chicago,
IL.


Page 1

Hassoun-2- 000000013

UNCLASSIFIED

Serial 32.TXT

Hassoun-2- 000000014

**Exhibit 32:**

**FBI Report dated 1/14/10 (Excerpt: Discovery 2:8)**

Serial 27.TXT

UNCLASSIFIED

FEDERAL BUREAU OF INVESTIGATION
CHS REPORTING DOCUMENT

Form Classification:          UNCLASSIFIED
Source Id:
Date:                         2010-01-15
Case Agent Name:              Hartman,Samuel  T.
Field Office:                 Chicago
Squad:                        CT III

Date of Contact:              2010-01-14
Participants/Witnesses:       TFO Robert Iwanicki


Type of Contact:              In Person
Location
Country:                      UNITED STATES
City:                         Chicago
State:                        Illinois
Date of Report                2010-01-14

Substantive Case File Number:

Source Reporting:

On 01/14/2010,                          . a confidential human source (CHS) not in
the position to testify and with good access whose reporting has been
corroborated in the past provided the following information:


CHS went to NAZARETH SWEETS on 1/12/10. CHS noticed that SAMI HASSOUN was not
there and asked where he was. They told CHS that he went to Kansas to see a
girl. The next day CHS met withSAMI and asked where he had gone. SAMI told CHS
he flew to Kansas and flew back the same day. He then offered an envelope to
the CHS. CHS opened the envelope and noticed it had money in it. CHS estimated
that there were approximately 100 x $1 bills all in sequential number order.
CHS asked SAMI what the money was for and he told CHS that they were all
counterfeit bills. SAMI explained that he went out to Kansas to meet a guy that
makes counterfeit U.S. bills. SAMI further explained that he saw what he
described as a professional machine that made the bills. SAMI said they put the
paper in, grabbed a silver plate and made the money. He went on and told CHS
that they had counterfeit plates to make other denominations including a silver
$20 plate.


SAMI encouraged CHS to keep all the money, but the CHS decided to just take two
of the $1 counterfeit bills. Upon meeting the writer on 1/14/10, CHS provided
the two $1 bills to TFO Iwanicki. TFO Iwanicki immediately said he was 99 sure
they were real, but he would take them back to the office to check.

Note: TFO Iwanicki notified writer on 1/15/09 that the bills werechecked at the
U.S. Secret Service office in Chicago, IL and are genuine.


Page 1

**Exhibit 33:**

**FBI Report dated 7/7/10 (Discovery 2:55-56)**

UNCLASSIFIED

| FD-209a | **FEDERAL BUREAU OF INVESTIGATION** |
|---------|-------------------------------------|
| (07/24/2010) | CHS CONTACT REPORT |

### HEADER

Source ID: ▮▮▮▮▮▮▮

Date: **10/19/2010**

Case Agent Name: **Hartman, Samuel T.**

Field Office/Division: **Chicago**

Squad: **CT III**

### CONTACT REPORT

Date of Contact: **07/07/2010**

List all present including yourself. (Do not include the CHS.): TFO Angel Lorenzo

Type of Contact: **In Person**

Country: **UNITED STATES**

Address Line 1: ▮▮▮▮▮▮▮

Address Line 2:

Address Line 3:

City: ▮▮▮▮▮▮

State: **Illinois**

Zip/Postal Code:

Anomalies: N/A

Life Changes: N/A

FBI investigative techniques/information revealed to source for operational purposes: N/A

Other: As previously recorded, writer and TFO Lorenzo met with CHS on 07/05, 07/06, and 07/07/2010. During the meetings with the CHS, he/she discussed possible benefits for introducing an Undercover Employee to SAMI SAMIR HASSOUN (which occurred on 07/08/2010). In addition, the CHS assessed the introduction as being a risk to his/her safety and his/her family's safety. Subsequently, the CHS queried writer and TFO Lorenzo about the possibility of receiving immigration benefits and/or monetary compensation. The writer and TFO Lorenzo did not make any promises for specific immigration benefits or monetary compensation to the CHS. In regards to the CHS's safety, writer and TFO Lorenzo advised the CHS that all available programs, resources, and assistance would be utilized to help ensure the CHS's safety should a threat manifest against the CHS or his/her family. Finally, the CHS agreed to introduce the UCE to HASSOUN without being promised any benefits.

### PROGRAM(S) ADDRESSED IN THIS REPORT

HQ Division:

Program:

Subprogram:

### INTELLIGENCE REQUIREMENT(S) ADDRESSED IN THIS REPORT

Region:

Country:

Substantive Case File Number:

Signed by:

  Click here to sign this section



  **Signed by STHARTMAN**    View details
on Tuesday, October 19, 2010 4:08 PM (Central Daylight Time)

| **FD-209a** (07/24/2010) | FEDERAL BUREAU OF INVESTIGATION |
|---|---|



Hassoun-2- 000000056

**Exhibit 34:**

**Transcription of Conversation between CHS and Hassoun dated 6/7/10 & 6/9/10 (Excerpt: Discovery 5: 4–5)**

**CD#1**

**Out_**███████████**_06-03-2010_034251PM**

An unknown male, [most likely the case agent], is testing the recording device.

**Out_**███████████**_06-04-2010_020016PM**

Sami told the CHS that he did not pay his phone bill; therefore, he can only receive calls and not make calls. He said that he'll try his best to meet with the CHS. Sami then asked if the CHS can pick him up, and the CHS said that he couldn't. They agreed that the CHS will pick Sami up from the BP gas station located on Montrose and Kedzie at around 1:30 PM.

**Out_**███████████**_06-05-2010_024711PM**

Sami tells the CHS that he was very tired and has been working since 4:30 in the morning. The CHS tells Sami that everything was okay and that he's hopeful that by Friday the cash will show up. Sami is very happy to hear that and indicates to the CHS that he's ready for it [the plan].

**Out_**███████████**_06-07-2010_020129PM**

The CHS tells Sami that he would like to meet with him at 2:30 pm to take care of things. Sami will meet the CHS after two O'clock.

**Out_**███████████**_06-07-2010_033235PM**

The CHS and Sami are making arrangements to meet at 2:45pm by the Starbucks coffee shop.

**Out_**███████████**_06-07-2010_121722PM**

Sami tells the CHS that he has the material and everything else planned out. The two men will meet between 2:00 and 2:30pm. Sami says that he is ready to meet with the CHS at anytime. The CHS said that the people were ready for him too.

Hassoun - 5       4

**Out_** ██████████ **06-08-2010_122637PM**

Sami tells the CHS that he was on his way to the Fresh Farm located at Touhy and Cicero Avenue. The CHS said that the piece of paper was delivered to the people and they were making plans. Sami asked the CHS if the people got the chance to see the material list he provided and what was their reaction. He said that he had prepared a good list of items for them and that he's ready for it.

**Out_** ██████████ **06-09-2010_044819PM**

Sami's voicemail. No message.

**Out_** ██████████ **06-09-2010_045528PM**

Sami tells the CHS that He's only about a minute away from him and that he was on his way to meet him. The CHS says that he will be waiting for Sami.

**Out_** ██████████ **06-09-2010_122420PM**

Sami tells the CHS that he'll be available to meet with him at around 2:30pm at the Starbucks coffee shop.

**Out_** ██████████ **06-10-2010_032757PM**

The CHS tells Sami that the people had to leave to sign some papers and hopefully they are going to finish everything at around four o'clock. Sami says that he was waiting for the CHS's call and that he was eager to hear some good news. Sami is hoping for the best and would like to know more as soon as the CHS learns something, after four o' clock.

Hassoun - 5     5

# Exhibit 35:

# Summary of Conversation between CHS and Hassoun
# dated 6/7/10 (Excerpt: Discovery 5:13)

size issue. Sami refers to the powerful impact of his mix to the extent that it might even bring down half of Sears Tower if it is placed in the rear. Sami notes that his mix is one time and a half the size of the Oklahoma City Bomb;

-Sami reveals that he received an assistance from a college chemistry professor. According to Sami, he and the professor drew the picture together. Sami says that he has the formula ready at home. Sami estimates that the materials would not cost more than $10,000;

-Speaking in a low voice, Sami refers to the mechanics of the formula. The CHS asks Sami to put it in writing for he might give it to "them" today and he asks Sami to be ready this week;

-Sami speaks about the details of his process in a very low voice;

-The CHS notes that they are not ready now because of the lack of materials;

-The CHS urges Sami to put his details in writing for he [CHS] would see the 'guy' in one hour. Sami refers to the remote control nature of the timing. The CHS stresses on Sami to record whatever he needs so he [CHS] would secure him the list;

-The CHS indicates that once the "group' okay the deal, he would go and bring the materials.

-The CHS refers to securing a stolen car that would be used in the operation, which should not be a difficult task;

-The CHS tells Sami that he can not carry out his task at his residence in view of his parents; rather, he should rent an apartment for this purpose;

-Sami indicates that he secured a job bin London and he expects to depart within two weeks.

-Responding to Sami's inquiry, the CHS advises against the idea of involving too many individuals in the operations for security reasons;

- The CHS refers to the step-by-step nature of the operation in terms of starting with a small blow and then advancing to more powerful strikes;

- The CHS reiterate his request to have Sami put his details in writing. Sami indicates that he needs to go to his house for he stores the information in his laptop;

-The CHS speaks about his contacts with several groups. He expects something to happen by next week, which underscores the need to be ready;

-The CHS informs Sami that later on he would meet with his group to discuss future plans;
-The CHS asks Sami to go home and put his details in writing;

-The two exit the establishment;

## Exhibit 36:

## FBI Report dated 6/8/10 (Excerpt: Discovery 2:37)

Serial 58.TXT

UNCLASSIFIED

FEDERAL BUREAU OF INVESTIGATION
CHS REPORTING DOCUMENT

Form Classification:          UNCLASSIFIED
Source Id:
Date:                         2010-06-08
Case Agent Name:              Hartman,Samuel  T.
Field Office:                 Chicago
Squad:                        CT III

Date of Contact:              2010-06-07
Participants/Witnesses:       TFO Angel Lorenzo


Type of Contact:              In Person
Location
Country:                      UNITED STATES
City:                         Chicago
State:                        Illinois
Date of Report                2010-06-08

Substantive Case File Number:

Source Reporting:


On 06/07/2010,a Confidential Human Source (CHS), with good access, much of
whose reporting has been corroborated, provided the following information.


CHS met with SAMI SAMIR HASSOUN (SAMI) to find out what materials SAMI needed
to conduct an attack in Chicago, IL. SAMI was not able to produce the list
right away and advised CHS that he had the list on his laptop computer back at
his apartment. CHS insisted that SAMI get his list off of his computer so CHS
could get it to his/her people to see what SAMI needs.


SAMI explained that he needed items such as a remote control, timing device,
dynamite, and other explosive material. SAMI said his bomb would be like
Oklahoma City's bombing. SAMI bragged to CHS that he had talked to a professor
(Unidentified Male) at his school (Writer's note: CHS previously reported that
SAMI went to Wright College. End note) about mixing some certain types of
liquids/explosives (CHS could not recallwhich types)together and the results
from doing so. The professor toldSAMI that the mix would be 10 times more
powerful than the Oklahoma City bombing.


Further, CHS reported that SAMI claims to know how to mix "everything" so as
not to blow himself up. He also claimed he couldmake a fake bomb just like what
happened in New York to put fear in peoples minds and advised CHS that if he
got enough money he could make it a real bomb. If SAMI is going to make the
real thing, he is going to need a couple of days to make the bomb after he gets
the materials.


At some point during their conversation, CHS reported that SAMI again talked

Hassoun-2- 000000037

**Exhibit 37:**

**Summary of Conversation between UC and Hassoun date redacted (Excerpt: Discovery 5:376-78)**

# US DEPARTMENT OF JUSTICE
## FEDERAL BUREAU OF INVESTIGATION



2111 W. Roosevelt Rd.
Chicago, IL 60608

File Number:

CD Number: ▮▮▮▮▮▮ — 25

Task Number: ▮▮▮▮▮▮▮▮

Source Language: ▮▮ Arabic / English

Target Language: *English*

Linguist: Benyamin M. Toma

## SUMMARY TRANSLATION

**Participants**

Subject       Sami HASSOUN
Confidential Human Source    CHS
Under Cover Employee    UCE

File# ▇▇▇▇▇▇▇▇
Job# 12598

CHS and Sami meet UCE in his hotel room. CHS introduces Sami and UCE to each other, and states that Sami is a close friend, and that UCE is here to meet Sami and see what kind of person he is. CHS also states that they are here to help Sami. Sami and UCE engage in a social conversation in which Sami reveals that he is a 23 years old, originally from Lebanon, who, at one point, used to live in France and Africa, then moved to Chicago two years ago as an immigrant. Sami says that he is currently a part time student; he speaks French, Arabic, and a little Spanish, and lives with his parents and a younger brother on the north side but he has his own place too. Sami also states that he has a green card (permanent residence) and a Lebanese passport and that he works in a bakery owned by a Lebanese man who is involved in import and export business overseas.

During the conversation CHS would interrupt and praise Sami and UCE and encourage them to work together, he also states that he worked very hard to set up this meeting. UCE asks about what Sami has in mind, and what the deal is. CHS asks Sami to tell UCE about the revolution. Sami starts by talking about his rough childhood since he left at the age of 12, and was raised by the French army until the age of 18 when he was in the streets of Marseilles, [France]. At this point the UCE gets an incoming call and talks to someone about cars. After the call, Sami tells UCE that his cousin in Germany is a car dealer who exports cars to Lebanon and the Gulf States. CHS suggests to UCE to use Sami in the car business in the future. Sami continues to talk about his past, he states that during his stay in Africa, there was what appeared to be a revolution against the white people, and since he was a student in a missionary school, the French army volunteered to take all the kids from these schools to France because the slaves [Africans] were pushing the white kids away and refuse to raise them. Sami says that his parents were afraid and agreed to send him to France supposedly, for two years, however, he remained there for a lot more than that and he started working in the streets of Marseilles until he moved to the United States. Once in the States, Sami added that he met the CHS who is considered by Sami to be like a father and he seeks his advice always. Sami says that after he met the CHS "I could say that he was on my side, I mean, he gave me the hint, and I was like shocked a little bit, but I kind of got the rest, you know? He gave me half the meal and I got the rest. So I kind of impressed him somehow and he liked me, you know?" The CHS says "for sure if you did not impress me man, you wouldn't be here."

Going back to the previous conversation, Sami tells UCE that Chicago is full of corruption, and that corruption is needed because it brings money. Sami says that his plan involves taking over that thing, because here in Chicago, there is one guy and that's the Mayor Daley who is making millions of dollars just by signing papers and giving business to certain companies. The other issue raised by Sami is the police force, and how it has been undermined by reducing it by 40% and the plan is to take advantage of that to replace the Mayor. The UCE asked how? Sami says by creating havoc in Chicago's night life and scare the people by planting explosives near the Wrigley Field and Rush Street areas, where most of the people go at nights and weekends. Sami received an incoming call; he appears to be talking to a female. After the call ends, Sami tells UCE that he is not planning to kill anybody, but just to plant two or three fake car bombs that will ignite but not explode, or do any damage. The purpose is to scare people, two weeks later; he would park a car bomb in different location and let it explode. That car will be parked in an area that will cause minimum damage. Then he will do the same thing in a different area, Sami

File# ████████████
Job# 12598

continues, the people will blame the security and the police officers, Sami also tells UCE that after two or three weeks he will hit the police in the alleys by hiring some Mexican kids to do it. After all this happening says Sami, people will start blaming Daley. UCE asks Sami about he means when he (Sami) says hit the police car. Sami says "you can kill, you can hurt." The attack will cause Chaos in the streets.

CHS states that Sami has to ask and get the approval of the people (UCE's people) before any attack on the police. Sami tells CHS that he will not do anything before asking him (CHS). CHS tells Sami that the people in California are very interested in his genius ideas and he will make millions of dollars. UCE tells Sami that he is not ready to say yes or no at this moment but he will take the case to his people and tell them about it. During the conversation, Sami tells UCE that another part of his plan is to bribe some people in the press to blame the Islamic, Hispanic, and Pakistani terrorist for all the chaos in the city. Sami tells UCE that his first hit would be Wrigley Field and then will go probably south and then west of Chicago targeting 4 or 5 places, and then move the hits out and around Chicago in Illinois. UCE inquired about the material Sami needs to execute his plans. Sami stated that he has a list of things that he needs, then he stated that he is thinking about chemicals and fertilizers, similar to the one used in the Oklahoma City bombing in 1995, but he will need that later for the big hit because he would like to see result of the first two or three hits. Sami also tells UCE, he would wait two to three months and then poison the drinking water or plant a virus in the Daley Center to make people think that some terrorist are trying to kill or assassinate the Mayor. Sami states, "You really aim Daley, you plan for assassination of Daley, but you don't kill him, you try to kill him." UCE tells Sami that they have to plan together, and then he inquires about Sami's strength points in executing the plan. Sami tells UCE that planning the hits will be the thing that he can do best, and also "do those cars" and "hit the police personally." UCE tells Sami that some people might get hurt. Sami states that in revolutions some people stay and some go, but once you win you can do good things for people. Sami also states that by doing something like this you have to put your feelings aside, then Sami states that this is a believe, an idea that he has, and he always wanted to do a revolution. Sami tells UCE, once I am in it; I want to do it that is it. UCE gives Sami his cell phone number, and tells him that he can't promise him anything now, but he will tell his (UCE's) people about Sami and his plans, and the material needed. UCE asks Sami if needs a ride to work, then asked where the best Arabian restaurant is. Sami accepted the offer from UCE, and CHS says good bye and leaves.

3

# Exhibit 38:

# FBI Report dated 6/21/10 (Discovery 1: 6–7)

Serial 6.TXT

UNCLASSIFIED

FEDERAL BUREAU OF INVESTIGATION
CHS REPORTING DOCUMENT

Form Classification:        UNCLASSIFIED
Source Id:
Date:                       2010-06-21
Case Agent Name:            Hartman,Samuel  T.
Field Office:               Chicago
Squad:                      CT III

Date of Contact:            2010-06-14
Participants/Witnesses:     TFO Angel Lorenzo


Type of Contact:            In Person
Location
Country:                    UNITED STATES
City:                       Chicago
State:                      Illinois
Date of Report              2010-06-21

Substantive Case File Number:                       ¿

Source Reporting:


 On 06/14/2010,a Confidential Human Source (CHS),            ,with good access,
much of whose reporting has been corroborated, provided the following
information.


 CHS advised SAMI SAMIR HASSOUN (SAMI) met with a girl, ANNE Last Name Unknown
(LNU)at a bar over the weekend. SAMI almost got into afight because of this
girl, butdoesn't have time to worry aboutgirls and things like that. He had a
lot of things on his mind.


 SAMI asked the CHS about what's new. CHS advised SAMI that things are ok, to
just give it some time, and that everything will be alright. SAMI had been
thinking about the upcoming Arabian Festival at the Daley Center. SAMI
explained that he could put a fake bomb near the festival. He wouldn't blow up
anything, he would just cause a disruption around the Daley Center. SAMI would
make it look real except he would intentionally leave one wire disconnected so
the bomb would not go off, yet it would create panic and fear.


 SAMI then talked about doing the same thing around Wrigley field. This would
create a lot of disruption in the area and paralyze the night life. SAMI would
put a car there one week and then a couple weeks later. Eventually nobody would
go there and the night lifenear Wrigley Field would slow down or stop. People
will be upsetand want more police and security. Once thesecurity is in place,
SAMI could hit the police. SAMI believed people would be upset with Mayor Daley
since he reduced the police force in every district in Chicago.


 SAMI has been looking for a busy location in the South Side of Chicago. If he
                              Page 1

Serial 6.TXT

paralyzed the night life on the North and Southside of Chicago, he could make the acts look like Al-Qaeda was behind them. SAMI will do this by having a couple of guys dress like he's with a group and have a long beard. While they are committing the act, SAMI will make a video and then give it to CNN or some other news organization. If people think its Al-Qaeda or some other group, then it will confuse the investigation and direct the attention elsewhere. The news needs stories so SAMI will give them another one. The tapes will claim revenge against Daley for not supporting Muslims and that if Daley doesn't resign they'll keep hitting Chicago.


SAMI is ready to quit working for PIERRE LNU and start working on his ideas. He can't wait to stop worrying about the job and start worrying about bigger things. SAMI is ready for the MIAMI thing, and CHS advised him to be patient.



UNCLASSIFIED

Hassoun-1- 000000007

**Exhibit 39:**

**FBI Report dated 7/8/10 (Discovery 1: 14)**

Serial 11.TXT

UNCLASSIFIED

FEDERAL BUREAU OF INVESTIGATION
CHS REPORTING DOCUMENT

Form Classification:          UNCLASSIFIED
Source Id:
Date:                         2010-07-15
Case Agent Name:              Hartman,Samuel  T.
Field Office:                 Chicago
Squad:                        CT III

Date of Contact:              2010-07-08
Participants/Witnesses:       SA David R. Krueger


Type of Contact:              In Person
Location
Country:                      UNITED STATES
City:                         Chicago
State:                        Illinois
Date of Report                2010-07-14

Substantive Case File Number:      ···            _·\\

Source Reporting:


  On 07/08/2010,a Confidential Human Source (CHS),           ?,with good access,
much of whose reporting has been corroborated, provided the following
information.


  CHS reported that he/she picked up SAMI SAMIR HASSOUNin route to a meeting
with Undercover Employee (UCE)'      HASSOUN was ready to meet the people,ready
to impress them, and had been waiting for this day.


HASSOUN talked to       about his plans to start a revolution in
Chicago.HASSOUN told       how he could start by doing a few bombs, but have
them fail. The idea behind the failure is psychological, to cause fear and not
casualties. He could also do a real bomb, poison the water (NFI), release a
virus in the Daley Center, or target Rush Street. CHS reported thatHASSOUN told
      that he is capable enough to carry out one of his plans andadvised he
learned a few things from the French military when he lived in Africa.


  CHS advised that he/she left the meeting when       and HASSOUN left to go get
something to eat.


UNCLASSIFIED


Page 1

**Exhibit 40:**

**Summary of Conversation between UC and Hassoun dated 8/16/10 (Excerpt: Discovery 5:372-73)**

# UNITED STATES DEPARTMENT OF JUSTICE
## FEDERAL BUREAU OF INVESTIGATION
### CHICAGO DIVISION



2111 W. Roosevelt Road
Chicago, IL. 60608

**File Number:** ▉▉▉▉▉▉▉ -24

**Task Number:** 12671

**Date of Recording:** 8-16-2010

**Time of Recording:** **53:40 - 53:55**
[Also translated most of Arabic conversations thereafter]

**CD#:** N/A

**Language:** English / Arabic

**Linguist:** Mellis A. Shammas

## SUMMARY TRANSLATION

**Participants**

| | | |
|---|---|---|
| UCE▉▉▉ | = | Under Cover Employee #▉▉▉ |
| UCE▉▉▉ | = | Under Cover Employee #▉▉▉ |
| SAMI | = | Sami Samir Hassoun |

[TN: All the names are here spelled according to the Intelligence Community Standard Transliteration [ICST] and the FBI case.

| | |
|---|---|
| *Italic* | *English* |
| **Bold/Underlined** | **Arabic** |

**Abbreviations:**

| | |
|---|---|
| [ ] | Translator's Notes |
| UI | Unintelligible |

Case Number: ████████████

Task Number: 12671

Sami Samir Hassoun was trying to show and explain something to UCE ████ and UCE ████ about another area when UCE ████ interrupted Sami and told him: "Before you start--before you start with another thing, I want--I want . . . You know, I talked to my brothers over there and we were talking and I just [UI], okay, it is going to be a lot easier to get, probably, explosives than what we talking, what would you prefer and what . . .?" Sami responds "**If you want; you can bring me whatever you want and what . . .?** **If you have something that you find suitable; bring it to me and I will plant it. I mean, I will do the whole thing, do you understand what I'm saying? You bring me a bag and I--I will plant it.**" UCE ████ replies: "Yeah, I mean, do you have any . . . does it --it doesn't matter if it is uh, explosives or something, I mean, explosive?" Sami responds: "**I have no objection on anything**" UCE ████ responds: "It doesn't matter? Okay." UCE ████ adds: "**You don't have any objection**" Sami interrupts UCE ████ and says "**I have no objection on anything [UI]--**" Sami interrupts UCE ████ and says "**I for you; it doesn't make any difference--?**" Sami interrupts UCE ████ and says "**I mean, you tell me on this road and at this time and I--I will make it.**"

UCE ████ asks Sami "How about the **date** and how about the time; what would you think it would be the best day for that? Because right now is Ramadan and everything, and it's going to be . . . Sami responds: "They don't care for Ramadan, you know" he adds, **if you want** September 12th, or if you want to do it do it on September 11th." When UCE ████ tells Sami and UCE ████ that September 11th falls on Saturday, Sami chants: **Praise God, Praise God.**

UCE ████ and UCE ████ told Sami to buy a nice Bag Pack, 2 Way Radio [Walkie Talkie] with a range of 2 miles plus and 2 Batteries [9 Volts] and to bring them with him next time they meet, Sami agrees.

UCE ████ and UCE ████ provided Sami with a Laptop Computer just in case he needs it for any planning and searching. UCE ████ advised Sami not to share the laptop with anybody. Sami also was provided with a Camera [Video Recorder] to video tape the areas that will be surveilled by him [Sami].

UCE ████ and UCE ████ ask Sami if he needs anything else, UCE ████ also asks Sami if he could dedicate his time for this while he is unemployed, Sami responds "**If I had an income they would say that I'm working and he is going to work, you know, my family doesn't ask me about anything**". UCE ████ counts one thousand dollars and gives it to Sami. UCE ████ and UCE ████ agreed to pay Sami,

Sami tells UCE ████ that this **money will suffice him for two weeks, he will be paying his family $800 and the rest will spend it on buying the Backpack, Walkie Talkie and 2 Batteries and a printer and the rest for his pocket.**

UCE ████ and Sami **agreed to talk to each other on Sunday.** UCE ████ asks Sami "**Do you want me to come with you?**" Sami responds: "**As you wish**". UCE ████ also asks

**Exhibit 41:**

**Recorded Conversation between UC and Hassoun dated 7/21/10 (Excerpts: Discovery 5: 81, 102, 111-12)**

| | | |
|---|---|---|
| 1<br>2 | UCE2 | Now, how do we get somebody of ours in power? |
| 3 | HASSOUN | How? |
| 4 | UCE2 | Yeah. |
| 5<br>6<br>7 | HASSOUN | That, I have no clue, you know, me, my thing is I can do my things on the streets... |
| 8 | UCE2 | Um-hum. |
| 9 | HASSOUN | ...do what I'm asked to do. |
| 10 | UCE2 | Okay. |
| 11<br>12<br>13 | HASSOUN | Give you my ideas, share my [UI] with you, tell you what's, what to do, you know. |
| 14 | UCE2 | To create some chaos in the city. |
| 15 | HASSOUN | You tell me your ideas. |
| 16 | UCE2 | Okay. |
| 17<br>18<br>19 | HASSOUN | You know, you tell me what to do, I te-, I tell you my ideas, you tell me what to do, you know. |
| 20 | UCE2 | Okay, give me a couple of examples. |
| 21 | HASSOUN | Couple of examples. |
| 22<br>23<br>24 | UCE2 | Do you want to blow something up, you want to shoot some-, well, what do you want to consider? |
| 25<br>26 | HASSOUN | Actually, it's not about blowing something up. It's about... |
| 27<br>28 | UCE2 | What do you, do, do you want do new democracy here? What do you want to do? |
| 29<br>30<br>31 | HASSOUN | ...it's not making a new democracy, it's about, you know, once you control an area of city like Chicago, for example, |

30

| | | |
|---|---|---|
| 1 | HASSOUN | This is about planning,... |
| 2 | UCE2 | ...a lot of time. |
| 3<br>4<br>5 | HASSOUN | ...sitting down, time, [UI], it needs all that.  That's why I'm telling you, it must take up.... |
| 6<br>7 | UCE2 | Right, but the, the question is do you have it. |
| 8 | HASSOUN | Do I have it? |
| 9 | UCE2 | Yes. |
| 10 | HASSOUN | I can have it, huh. |
| 11<br>12 | UCE2 | No, you have it or you don't.  You have dedication or you don't. |
| 13 | HASSOUN | I have dedication. |
| 14 | UCE1 | [UI]. |
| 15<br>16 | UCE2 | You know.  You have the tenacity to finish what you start or you don't. |
| 17 | HASSOUN | Yes, I do. |
| 18 | UCE1 | Yeah. |
| 19 | UCE2 | I mean, it's, this is.... |
| 20<br>21 | HASSOUN | But I have not connections in getting materials, in getting a virus. |
| 22 | UCE2 | What, what do you bring to table? |
| 23<br>24 | HASSOUN | I bring you my work, you know.  I bring you my ideas. |
| 25 | UCE2 | Okay.  You, you have training? |
| 26 | HASSOUN | Yes. |
| 27 | UCE2 | What sort of training? |

| | | |
|---|---|---|
| 1<br>2<br>3 | | and I must work only three days a week,<br>no more than this, and if I work three<br>days a week, I cannot feed my family. |
| 4<br>5 | UCE2 | Right. How many days do you work right<br>now? |
| 6<br>7 | HASSOUN | I work almost six days and a half a<br>week. |
| 8 | UCE2 | Six and a half days, okay. |
| 9<br>10<br>11 | HASSOUN | You know. So my free time is mostly at<br>night where I go sit down at home, I'm<br>tired, just think about ideas,... |
| 12<br>13 | UCE1 | [UI] please, uh, [UI],... [IN BACKGROUND<br>ON PHONE] |
| 14<br>15 | HASSOUN | ...and just write them down and just jot<br>my ideas down, you know. |
| 16 | UCE2 | Did you bring any of those? |
| 17 | UCE1 | ...uh, 650. [IN BACKGROUND ON PHONE] |
| 18 | HASSOUN | No, no. |
| 19<br>20 | UCE1 | Yeah, yeah, I [UI]. [IN BACKGROUND ON<br>PHONE] |
| 21 | HASSOUN | You know what I mean, that's like... |
| 22<br>23 | UCE1 | Yeah, or I do. [SOUND OF CLICK] [ON<br>PHONE IN BACKGROUND] |
| 24 | UCE1 | Five minutes. [HE TALKS TO HIMSELF] |
| 25 | HASSOUN | ...it's all about time [UI]. |
| 26<br>27<br>28<br>29<br>30<br>31<br>32 | UCE2 | And, you know, if this [UI] takes some<br>time on both sides, you know, on your<br>side and our side, you know. I'm not<br>going to come here and say, "Hey,<br>there's $10,000," you know. We can<br>start you slow. I mean, and if you need<br>help, we can get you, we can get you a |

| 1 2 | | camera, we can get you, you know, well, I don't know,... |
|---|---|---|
| 3 | UCE1 | Anybody want to use the bathroom? |
| 4 | HASSOUN | [UI]. |
| 5 6 7 8 9 10 | UCE2 | ...uh, but you'd remember, you know, our, my side here, too, you know. We got to make sure that you are who you are. Do you see what I mean. 'Cause [UI], so let, let, let, let's talk about and then tell me, tell me what you need. |
| 11 12 | HASSOUN | To start off, you know, the studies. I don't have a computer. |
| 13 14 | UCE2 | Okay. You don't have any, any computer at all? |
| 15 16 | HASSOUN | I have a computer which is like almost from 1996. |
| 17 | UCE2 | [UI]. Okay. |
| 18 | HASSOUN | That I bought for $450... |
| 19 | UCE2 | Okay. |
| 20 21 | HASSOUN | ...from a friend. It's at home [UI] and texting. |
| 22 | UCE2 | Okay. |
| 23 24 | HASSOUN | You need, like, an hour or two [UI], you know. |
| 25 | UCE2 | Okay. |
| 26 27 28 | HASSOUN | It's like [UI], but it's, like, it's, like, so slow, but my parents use, you know, [UI] computer I have at home. |
| 29 30 31 | UCE2 | Right, and you, okay. You, so you don't have a computer. You have any cameras or anything? |
| 32 | HASSOUN | No, I have no cameras. |

61

Hassoun - 5      112

**Exhibit 42:**

**FBI Report dated 9/3/10 (Discovery 1:86–87)**

UNCLASSIFIED

To: Chicago   From:  Chicago
Re: ████████████████, 09/03/2010


On 07/07/2010, Group II Undercover Operation ████████ ████ was approved by the Chicago FBI's SAC. The day after, 07/08/2010, at approximately 12:10pm an operationally controlled meeting was conducted and recorded at EMBASSY SUITES CHICAGO, 511 North Columbus Drive, Chicago Illinois, 60611 room number 838. Undercover Employee (UCE) ████████, HASSOUN, and a Confidential Human Source (CHS) all participated in this meeting.

On 07/21/2010, at approximately 2:40pm, an operationally controlled meeting was conducted and recorded at the Hilton Hotel O'Hare, at O'Hare International Airport, Chicago, Illinois 60666 in room number 3088. Participants of the meeting included UCE ████, UCE ████, and HASSOUN. HASSOUN presented a few more ideas of committing an act of violence in addition to showing and stating his willingness. After the meeting in the hotel, UCE █████ UCE █████ and HASSOUN drove in a technically equipped (audio and video recorded) vehicle. HASSOUN took the two UCEs by Wrigley Field and then the Daley Center, both in Chicago, Illinois. HASSOUN explained varies ideas of an act of violence at each of the two locations.

On 08/16/2010 at approximately 12:40pm HASSOUN entered his vehicle and proceeded to the operationally controlled meeting located at Residence Inn Hotel, 7101 Chestnut Street, Rosemont, Illinois, 60018, room number 248. The meeting began at approximately 1:20pm and lasted approximately one hour and twenty minutes with the following individuals participating in the meeting: UCE1, UCE2, and HASSOUN. Live monitoring of the meeting was conducted via audio and video surveillance (Reference █████ ████████) from room 249, which is adjacent to the meeting room 248, at the Residence Inn. During the meeting HASSOUN again stated his willingness to commit an act of violence. In addition, HASSOUN completed a surveillance video of the targeted area and presented the video to the UCEs. In conclusion, HASSOUN picked September 11th as his attack date and a trash can in the vicinity of Mullens Irish Bar on N. Clark Street, Chicago, Illinois (near Wrigley Field) as his target.

On 08/31/2010 at approximately 1:00pm, an operationally controlled meeting, with UCE ████, UCE ████, and HASSOUN, was conducted and recorded at the same Residence Inn Hotel as on 08/16/2010 in room number 309. At the meeting, HASSOUN brought a back pack, two walkie talkies, and batteries. All of the items were to be used in the construction of an explosive device. In addition, HASSOUN brought an SD card from a digital camera containing pictures of the targeted area. Further, HASSOUN

UNCLASSIFIED

Hassoun-1-  000000086

UNCLASSIFIED

To: Chicago    From:  Chicago
Re: ███████████████, 09/03/2010


presented three targets:  a trash can in the vicinity of Sluggers
Bar, trash can in the vicinity near the corner of N Clark Street
and W Addison Street, and the Chicago Transit Authority (CTA)
train station at Belmont Street.  The meeting lasted
approximately 35 minutes and then moved to a technically equipped
vehicle.  The three participants drove down to the vicinity of
Wrigley Field, N. Clark Street and W Eddy Street, Chicago,
Illinois.  At this location, HASSOUN preformed a dry run
indicating how long it would take him to walk from a parked car
to the target location, and then return.  The vehicle portion of
the meeting lasted approximately 1 hour and then continued in
room number 309 at the Residence Inn.  Back at the hotel, HASSOUN
confirmed his willingness to commit an act of violence, and
committed to September 18th, 2010 as the attack date.

        The purpose of this EC is to request Chicago Evidence
Control to ship the following 1B items to the Explosives Unit at
the FBI Laboratory:  1B6 (two Cobra Walkie Talkies with
batteries), 1B8 (two packages of 9V batteries and two packages of
4 each AAA batteries), and 1B9 (one Eagle Creek back pack).  The
package should be addressed to: ███████████████, FBI
Laboratory, Explosives Unit, ██████████,
████████████.  Upon the Explosive Unit's receipt of the
items, it is respectfully requested that the unit constructs an
inert explosive device using the 1B items.  Further guidance on
the specifics of the device will follow via telephone contact
with Explosives Unit.

UNCLASSIFIED

3

**Exhibit 43:**

**FBI Report dated 9/8/10 (Discovery 1:92)**

**UNCLASSIFIED**

To: Counterterrorism  From:  Chicago
Re:  ██████████████  09/08/2010

---

**LEAD(s):**

**Set Lead 1:   (Action)**

<u>COUNTERTERRORISM</u>

<u>AT WASHINGTON, DC</u>

**Details:**  Respectfully request that ITOS I / CONUS III / Team III approve of the construction, and the use of an inert explosive device in Group II Undercover Operation Daily Grind.

**Set Lead 2:   (Action)**

<u>LABORATORY</u>

<u>AT QUANTICO, VA</u>

**Details:**  Respectfully request the Explosives Unit to construct an inert device using the back pack and batteries HASSOUN brought to the 08/31/2010 UCO meeting.  More specifically, that the Explosives Unit use six (6) inert blocks of C4, ball bearings, an inert blasting cap, and a digital timer in the construction of the device.

◆◆

**UNCLASSIFIED**

Hassoun-1- 000000092

**Exhibit 44:**

*United States v. Issa*, 09-CR-1244 (BSJ), Excerpt from
Sentencing Transcript

1

```
       C3CAAISSS                    Sentence
 1    UNITED STATES DISTRICT COURT
 1    SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x
 2
 3    UNITED STATES OF AMERICA,
 3
 4              v.                        09 CR 1244 (BSJ)
 4
 5    OUMAR ISSA,
 5
 6              Defendant.
 6
 7    ------------------------------x
 7
 8                                   New York, N.Y.
 8                                   March 12, 2012
 9                                   2:10 p.m.
 9
10
10    Before:
11
11                   HON. BARBARA S. JONES,
12
12                                   District Judge
13
13
14                        APPEARANCES
14
15    PREET BHARARA
15         United States Attorney for the
16         Southern District of New York
16    EDWARD KIM
17    CHRISTIAN EVERDELL
17         Assistant United States Attorney
18
18    JULIA GATTO
19         Attorney for Defendant Issa
19    SABRINA SHROFF
20
21
22    ALSO PRESENT:  MOHAMED M. TOURE, Interpreter
23
24
25
                  SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300
```

49

C3CAAISSS                    Sentence
1           THE COURT:  All right.  First, I think I failed to
2    mention that my findings with respect to evidence of the
3    terrorism enhancement were by a preponderance which is the
4    proper standard, but now to sentence.
5           I don't believe that a departure under the guidelines
6    is provided for in this case.  However, I do believe based on
7    the 3553(A) factors that have been provided to the Court or
8    argued to the Court by counsel for the defendant that a
9    significant variance from a 15 year sentence is warranted in
10   this case.
11          Let me state the reasons for my variance.
12          First of all, it seems obvious that not every
13   participant in a terrorist enterprise will merit equal
14   punishment but the terrorism enhancement does treat all
15   participants alike to the extent that it enhances by the same
16   number both the offense level and also elevates the criminal
17   history category for anyone found to have merited the
18   enhancement to criminal history category six.
19          To avoid unwarranted disparity and because I think the
20   enhancement of the criminal history category overstates the
21   seriousness of this defendant's criminal conduct those are the
22   principle reasons why I believe a variance is warranted.
23          Just let me note the following for the record.
24          Of course because this was a government sting
25   operation there was no actual involvement by this defendant in
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

C3CAAISSS                       Sentence

1   the activities of FARC.  This defendant, as recognized by all,
2   was told by informants that they worked with the Colombians
3   from the FARC.  He did not know what FARC was at the time.  And
4   indeed appears that all of his knowledge regarding FARC was
5   based upon what he was told by the informants.
6           Issa was, certainly, not told of specific detailed
7   terrorist acts or plots of the sort involved in most other
8   material support cases which I have reviewed.
9           In Cromerty, for instance, where the terrorism
10  enhancement was applied there is evidence the defendant
11  intended to aid JEM in carrying out a plot to fire missiles at
12  U.S. military airplanes.  The evidence also showed that the
13  confidential informant in this case had "made the objective of
14  the terrorist mission clear and so there would be no doubt,
15  apparently, the CI added that this, meaning the attacks they
16  were planning, is to send them, the United States, a message.
17          Also, in contrast to the facts of this case are the
18  facts in that -- in that case at trial the government proved
19  that the defendant knew and intended that a missile would be
20  used in an attack on the Pakistani embassador in New York City.
21          There are other cases but I point to those two.  Here
22  Issa's conduct, this defendant's conduct, to me is less serious
23  than those of the cases I have cited and other similar cases I
24  have reviewed.  In this context it's also worth noting that the
25  defendant is the least culpable member of the conspiracy
                   SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

C3CAAISSS                     Sentence

1   charged here and that he introduced the informant and the
2   source to his co-defendant, Tuareg, but did nothing else to
3   further the objective of helping the transport of drugs or to
4   help the objective of getting any weapons. And as has been
5   mentioned, in fact, he admitted on tape that he could not
6   himself help in the transportation of the drugs.
7           And with respect to the weapons, I believe his comment
8   was that that could be done if it was possible anything could
9   be done in Mali.
10          I also believe that it's pretty clear that the
11  defendant's motivation in this case was money and not to
12  influence the government, for political reasons. Now I
13  recognize that motivation is not relevant to the application of
14  the enhancement. It could not be any clearer from a want that
15  that is the case. However, it is something that I believe the
16  Court may consider as a factor for a variance. It seems clear
17  to me that this defendant was not ideologically motivated. And
18  this to me makes a difference and is relevant to whether or not
19  he is looking to commit further crimes and be a danger. The
20  defendant who is committed to the goals of a terrorist
21  organization is far more likely to recidivate and to pose a
22  danger to the world community precisely because of his
23  ideological commitment. And I think more likely than a
24  defendant whose goal was for money and opportunistic. I think
25  this means that this defendant can be deterred more easily than

C3CAAISSS                    Sentence
1    the ideologically motivated defendant who may be and I believe
2    is the more typical defendant in material support cases where
3    the terrorism enhancement is imposed.
4            Now with respect to criminal history category six
5    which is automatically applied under the enhancement in the
6    guidelines, as I said, I think it substantially overrepresents
7    the seriousness of Issa's criminal record and, again, the
8    likelihood that he will engage in any future criminal conduct.
9    He has no prior criminal history.  And I am not persuaded that
10   the transcripts show that he has previously actually engaged in
11   drug smuggling.  There is also no other evidence of previous
12   illegal acts.  Although given the opportunity to make money he
13   surely facilitated the meeting between the informants and his
14   friend, Tuareg.
15           There is also the evidence submitted by the defendant
16   in letters from his family which indicate that he has never
17   been in trouble before and it was not just familiarly but
18   others in Mali.
19           The government does not have any other evidence to the
20   contrary.  And once, again, I would just stress that Issa's
21   lack of ideological commitment to the goals of any terrorist
22   organization makes it far less likely that he will engage in
23   any future criminal conduct.  And having never spent any time
24   in prison before, a 15 year sentence seems greater than
25   necessary to achieve that goal.

53

C3CAAISSS                   Sentence

1          I have also considered -- well, I've considered all of
2     the arguments made by defense but I've also considered that he
3     has accepted responsibility which, of course, everyone who
4     pleads guilty does and he has received, at least under the
5     guidelines, some benefit from that.  But I also note that he
6     gave information to the agents as soon as he was in their
7     custody with respect to his own activities and in that form
8     also accepted responsibility early.
9          I am also counseled by the fact in making my decision
10    on a variance that he appears to have very difficult family
11    circumstances.  There is ample proof that he has a wife and six
12    year old daughter who suffers from a blood condition and that
13    condition, and that she requires a great deal of medical care
14    as well as money for that medical care.  He also supports his
15    elderly parents.  And all of these members of his family
16    require at least some financial and emotional support from him.
17    So I give that some weight.
18         I also give some weight to the fact that his
19    conditions of incarceration have been difficult.  He has no
20    visitors because of, of course, his family is in Africa and
21    they are not, do not have the wherewithal to travel.  He has in
22    frequent phone conversations and it seems clear from the
23    various records that you've seen that he has seriously, he has
24    suffered serious physical problems while incarcerated based on
25    a number of issues, but one of them appears to be his inability

54

C3CAAISSS                    Sentence

1    to reconcile to our climate as opposed to the climate that he
2    is used to in Africa.  Whatever the cause, he has suffered from
3    some serious physical problems.
4            Lastly, and I give this some weight in mentioning it
5    because it was an argument he has agreed to an order of removal
6    to Mali and he has agreed not to challenge that removal and he
7    has agreed to do whatever is required to assist in his removal.
8    I don't give that great weight in my decision here.
9            All right.  Let me now state -- are there any other
10   arguments that you'd like me to specifically discuss,
11   Ms. Gatto?  I have read your motions.
12           MS. GATTO:  No, your Honor.  I need to file my
13   sentencings submissions on ECF and adopt them as part of the
14   record but I can't think of anything.
15           THE COURT:  Okay.  I assure you I've considered each
16   and every one, the ones that I've just mentioned are ones that
17   I have considered and that have had some weight with respect to
18   the sentence.
19           All right.  Let me now state the sentence I intend to
20   impose.
21           It is the judgment of this Court that the defendant be
22   remanded to the custody of the Bureau of Prisons for a term of
23   57 months, to be followed by -- and this I need to ensure is
24   accurate.  The probation department does not recommend any
25   supervised release term that makes sense to me.

**Exhibit 45:**

**Letter from Employer, Pierre Mounsef**

October 3, 2012

Dear Judge Gettleman,

My name is Pierre Mounsef and I am the head manager of Sanabel Bakery. Sanabel is a Lebanese grocery in the Irving Park neighborhood of Chicago. I first met Sami Hassoun in 2009, when he was a manager at Nazareth Sweets, a nearby neighborhood business. While Sami was there, I noticed his work ethic and how good he was with customers. Eventually, Sami left Nazareth to work for me at Sanabel Bakery.

Sami was at Sanabel from the winter of 2009 until the summer of 2010. While at Sanabel, Sami worked tirelessly. He was responsible and reliable, taking on even the most difficult work assignments.

Sami only made a modest wage, but to my knowledge he used the pay he received to help his family buy groceries and pay rent. Also, Sami was a good guy to those around him. My wife and children were often at Sanabel, and Sami always treated them with kindness and respect.

I hope that you will take this information into account when sentencing Sami.

Sincerely,

Pierre Mounsef

**Exhibit 46:**

**MCC Medical Records**



**U.S. Department of Justice**

~~Federal Bureau of Prisons~~

*Metropolitan Correctional Center*
*71 W. Van Buren Street*
*Chicago, Illinois 60605*

September 7, 2012

Alison Siegler
Associate Clinical Professor of Law
Director, Federal Criminal Justice Clinic University of Chicago Law School
6020 S. University Avenue
Chicago, Illinois 60637

Re:  Hassoun, Sami, Reg. No. 42215-424

Alison:

Enclosed please find the medical records for inmate Sami Hassoun in response to your request.  Should you have any questions or concerns, please contact me at (312) 322-0567, ext. 1503 or at jknepper@bop.gov.

Sincerely,

Jennifer K. Knepper
Attorney

1

# Bureau of Prisons
## Health Services
## Health Problems

Reg #: 42215-424      Inmate Name: HASSOUN, SAMI SAMIR

| Description | Type | ICD | Diag. Date | Status | Status Date | Comments |
|---|---|---|---|---|---|---|
| **PPD+ Prophy Incomplete** | | | | | | |
| 06/18/2012 12:29 EST   Nowakowski, Bonnie M DO/Acting CD | Chronic | 795.5E | 06/18/2012 | Current | 06/18/2012 | INH Rx TO BE INITIATED @ FINAL DESTINATIO N |
| 12/19/2011 19:14 EST   Nowakowski, Bonnie M DO/Acting CD | Chronic | 795.5E | 04/04/2011 | Current | 12/19/2011 | INH Rx TO BE INITIATED @ FINAL DESTINATIO N |
| **Dental caries extending into pulp** | | | | | | |
| 04/04/2011 22:45 EST   Iskandar, Albert MLP | Chronic | 795.5E | 04/04/2011 | Current | 04/04/2011 | |
| 12/23/2010 12:18 EST   Vaccarello, Rick DDS | Chronic | 521.03 | 12/23/2010 | Current | 12/23/2010 | Irreversible pulp Normal periradicular |
| **Familial Mediterranean fever** | | | | | | |
| 12/19/2011 19:13 EST   Nowakowski, Bonnie M DO/Acting CD | Chronic | 277.31 | 09/27/2010 | Current | 12/19/2011 | INMATE REPORT ONLY. NOT confirmed with medical records. CLINICALLY ASYMPTOMATIC 2 NO PREVENTIVE RX |
| 09/27/2010 17:37 EST   Harvey, Paul MD, RMD | Chronic | 277.31 | 09/27/2010 | Current | 09/27/2010 | INMATE REPORT ONLY. NOT confirmed with medical records. |
| **Other conjunctivitis** | | | | | | |
| 12/22/2011 18:01 EST   Iskandar, Albert MLP | Temporary/Acute | 372.39 | 12/22/2011 | Current | 12/22/2011 | |
| **Constipation, unspecified** | | | | | | |
| 12/19/2011 19:14 EST   Nowakowski, Bonnie M DO/Acting CD | History/Resolved | 564.00 | 06/22/2011 | Resolved | 12/19/2011 | NOT A CURRENT PROBLEM |
| 06/22/2011 10:53 EST   Harvey, Paul MD, RMD | Temporary/Acute | 564.00 | 06/22/2011 | Current | 06/22/2011 | |
| **Gastritis** | | | | | | |
| 12/19/2011 19:14 EST   Nowakowski, Bonnie M DO/Acting CD | History/Resolved | 535.50 | 11/18/2010 | Resolved | 12/19/2011 | NOT A CURRENT PROBLME |
| 11/18/2010 13:27 EST   Harvey, Paul MD, RMD | Temporary/Acute | 535.50 | 11/18/2010 | Current | 11/18/2010 | |

Total: 6

# Bureau of Prisons
## Health Services
## Clinical Encounter - Administrative Note

| Inmate Name: | HASSOUN, SAMI SAMIR | | | | Reg #: | 42215-424 |
|---|---|---|---|---|---|---|
| Date of Birth: | | Sex: | M | Race: WHITE | Facility: | CCC |
| Note Date: | 12/02/2010 10:19 | Provider: | Velazquez, Maria MLP | | Unit: | Z02 |

Admin Note encounter performed at Health Services.
**Administrative Notes:**

**ADMINISTRATIVE NOTE 1**        **Provider:** Velazquez, Maria MLP

Inmate requesting for Colchicine tablets which was prescribed to him while he was in the Middle East for his Familial Mediterranean Fever.

Inmate's request was denied by the Clinical Director. CD counseled the inmate about the risks of colchicine.

**Copay Required:** No        **Cosign Required:** Yes
**Telephone/Verbal Order:** No

Completed by Velazquez, Maria MLP on 12/02/2010 10:26
Requested to be cosigned by Harvey, Paul MD, RMD.
Cosign documentation will be displayed on the following page.

# Bureau of Prisons
# Health Services
# Clinical Encounter

| | | | |
|---|---|---|---|
| Inmate Name: HASSOUN, SAMI SAMIR | | Reg #: | 42215-424 |
| Date of Birth: ▉▉▉▉▉ | Sex: M Race: WHITE | Facility: | CCC |
| Encounter Date: 06/04/2012 09:41 | Provider: Carrera, Lida MLP | Unit: | C03 |

Sick Call/Triage encounter performed at Health Services.

**SUBJECTIVE:**

COMPLAINT 1        Provider: Carrera, Lida MLP

Chief Complaint: Other Problem

Subjective: States since age 6-7 was dx with mediterranei fever, states has episodes every week, abdominal pain with constipation, then followed with vomiting and diarrhea then goes away. States was on col chine no doses since here. 2 days ago had last episode. No pain

Pain Location:

Pain Scale:

Pain Qualities:

History of Trauma:

Onset: 5+ Years

Duration: 5+ Years

Exacerbating Factors: certain foods ,bean, milk nuts

Relieving Factors: having a BM

Comments: NAD

**OBJECTIVE:**

**Temperature:**

| Date | Time | Fahrenheit | Celsius | Location | Provider |
|---|---|---|---|---|---|
| 06/04/2012 | 10:06 CCC | 97.1 | 36.2 | Tympanic | Carrera, Lida MLP |

**Pulse:**

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 06/04/2012 | 10:06 CCC | 68 | Radial | Regular | Carrera, Lida MLP |

**Respirations:**

| Date | Time | Rate Per Minute | Provider |
|---|---|---|---|
| 06/04/2012 | 10:06 CCC | 14 | Carrera, Lida MLP |

**Blood Pressure:**

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|---|---|---|---|---|---|---|
| 06/04/2012 | 10:06 CCC | 112/68 | Left Arm | Sitting | Adult-regular | Carrera, Lida MLP |

**Exam:**

Abdomen

Inspection

Yes: Normal, Peristalsis, Flat

No: Ascites, Pulsations, Bulging Flanks, Obese, Injury, Bulges, Mass(es), Distension

Auscultation

Yes: Normo-Active Bowel Sounds

Percussion

Yes: Tympany, Dullness, Normal Liver Span, Normal Spleen Span

Palpation

Yes: Soft, Non-tender on Palpation

No: Guarding, Rigidity, Tenderness on Palpation, Tenderness on Light Palpation, Tenderness on Deep

| Inmate Name: | HASSOUN, SAMI SAMIR | | | Reg #: | 42215-424 |
|---|---|---|---|---|---|
| Date of Birth: | | Sex: | M   Race:  WHITE | Facility: | CCC |
| Encounter Date: | 06/04/2012 09:41 | Provider: | Carrera, Lida MLP | Unit: | C03 |

**Exam:**

> Palpation, Rebound Tenderness, Shifting Dullness, Fluid Wave

> negative abdomen on exam, gives h/o of Mediterranean fever since age 5-6. Will order blood test, presented case to Acting CD agreed to start colchicine tx and add to clinic for GI

**ASSESSMENT:**

| Description | ICD9 | Status | Status Date | Progress | Type |
|---|---|---|---|---|---|
| Familial Mediterranean fever | 277.31 | Current | 12/19/2011 | Not Improved/Same | Chronic |
| Health Problem Comments: | | | | | |

> INMATE REPORT ONLY.
> NOT confirmed with medical records.
> CLINICALLY ASYMPTOMATIC
> NO PREVENTIVE RX

**PLAN:**

**New Medication Orders:**

| Rx# | Medication | Order Date | Prescriber Order |
|---|---|---|---|
| | Colchicine Tablet | 06/04/2012 09:41 | 0.6 mg Orally  -Two Times a Day x 30 day(s) -- Take 1 tablet by mouth twice daily. |

> Indication: Familial Mediterranean fever

> One Time Dose Given: No

**New Laboratory Requests:**

| Details | Frequency | Due Date | Priority |
|---|---|---|---|
| Blood tests-c-C3, total | One Time | 06/13/2012 00:00 | Routine |
| Blood tests-c-C4, total | | | |
| Blood tests-i-j-IgA, IgG, IgM, serum | | | |
| Blood tests-u-v-w-x-y-z-Uric acid | | | |
| Blood tests-d-e-f-Erythrocyte Sedimentation Rate (ESR) | | | |

> Additional Information:

> h/o of familiar Mediterranean fever, colchicine started

> Labs requested to be reviewed by : Nowakowski, Bonnie M DO/Acting CD

**Disposition:**

> Return Immediately if Condition Worsens

**Other:**

> advised pt also to try and keep a food diary, to help identify foods adding to current condition.

**Patient Education Topics:**

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 06/11/2012 | Counseling | Compliance - Treatment | Carrera, Lida | Verbalizes Understanding |

| Inmate Name: HASSOUN, SAMI SAMIR | | | Reg #: 42215-424 |
| Date of Birth: ▬▬▬▬ | | | Facility: CCC |
| Encounter Date: 06/04/2012 09:41 | Sex: M Race: WHITE | | Unit: C03 |
| | Provider: Carrera, Lida MLP | | |

**Copay Required:** Yes          **Cosign Required:** Yes
**Telephone/Verbal Order:** No

Completed by Carrera, Lida MLP on 06/11/2012 09:32
Requested to be cosigned by Nowakowski, Bonnie M DO/Acting CD.
Cosign documentation will be displayed on the following page.

# Bureau of Prisons
# Health Services
# Clinical Encounter

| Inmate Name: | HASSOUN, SAMI SAMIR | | | Reg #: | 42215-424 |
|---|---|---|---|---|---|
| Date of Birth: | | Sex: | M Race: WHITE | Facility: | CCC |
| Encounter Date: | 11/29/2012 09:16 | Provider: | Kruger, Michael R. Med | Unit: | C03 |

Admin Note encounter at Health Services.

**Reason Not Done:** Refused

**Comments:** he has a lot of heartburn , stomach pains with difficulty breathing, waking up at night and vomiting.

Inmate Refused
**Cosign Required:** No
Completed by Kruger, Michael R. Med Records Tech on 12/07/2012 09:16.

# Bureau of Prisons
## Health Services
## Health Problems

Reg #: 42215-424      Inmate Name: HASSOUN, SAMI SAMIR

| Description | Type | Axis | Code Type | Code | Diag. Date | Status | Status Date |
|---|---|---|---|---|---|---|---|
| **PPD+ Prophy Incomplete** | | | | | | | |
| 06/18/2012 12:29 EST Nowakowski, Bonnie M DO/Acting INH Rx TO BE INITIATED @ FINAL DESTINATION | Chronic | III | ICD-9 | 795.5E | 06/18/2012 | | |
| 12/19/2011 19:14 EST Nowakowski, Bonnie M DO/Acting INH Rx TO BE INITIATED @ FINAL DESTINATION | Chronic | III | ICD-9 | 795.5E | 04/04/2011 Current | | 12/19/2011 |
| 04/04/2011 22:45 EST Iskandar, Albert MLP | Chronic | III | ICD-9 | 795.5E | 04/04/2011 Current | | 04/04/2011 |
| **Dental caries extending into pulp** | | | | | | | |
| 12/23/2010 12:18 EST Vaccarello, Rick DDS | Chronic | III | ICD-9 | 521.03 | 12/23/2010 Current | | 12/23/2010 |
| Irreversible pulp | | | | | | | |
| Normal periradicular | | | | | | | |
| **Familial Mediterranean fever** | | | | | | | |
| 12/19/2011 19:13 EST Nowakowski, Bonnie M DO/Acting INMATE REPORT ONLY. | Chronic | III | ICD-9 | 277.31 | 09/27/2010 Current | | 12/19/2011 |
| 09/27/2010 17:37 EST Harvey, Paul MD, RMD INMATE REPORT ONLY. | Chronic | III | ICD-9 | 277.31 | 09/27/2010 Current | | 09/27/2010 |
| NOT confirmed with medical records. | | | | | | | |
| NOT confirmed with medical records. CLINICALLY ASYMPTOMATIC NO PREVENTIVE RX | | | | | | | |
| **Esophageal reflux** | | | | | | | |
| 10/11/2012 15:50 EST Mohan, Brij MD, Clinical Director | Temporary/Acute | III | ICD-9 | 530.81 | 10/11/2012 Current | | 10/11/2012 |
| **Spasm of muscle** | | | | | | | |
| 12/12/2012 12:55 EST Mohan, Brij MD, Clinical Director | History/Resolved | III | ICD-9 | 728.85 | 11/07/2012 Resolved | | 12/12/2012 |
| 11/07/2012 14:43 EST Velazquez, Maria MLP | Temporary/Acute | III | ICD-9 | 728.85 | 11/07/2012 Current | | 11/07/2012 |
| **Other conjunctivitis** | | | | | | | |
| 12/12/2012 12:55 EST Mohan, Brij MD, Clinical Director | History/Resolved | III | ICD-9 | 372.39 | 12/22/2011 Resolved | | 12/12/2012 |
| 12/22/2011 18:01 EST Iskandar, Albert MLP | Temporary/Acute | III | ICD-9 | 372.39 | 12/22/2011 Current | | 12/22/2011 |

# Bureau of Prisons
# Health Services
# Clinical Encounter

| | | | | |
|---|---|---|---|---|
| Inmate Name: | HASSOUN, SAMI SAMIR | | Reg #: | 42215-424 |
| Date of Birth: | | Sex: M Race: WHITE | Facility: | CCC |
| Encounter Date: 11/07/2012 13:25 | | Provider: Velazquez, Maria MLP | Unit: | C03 |

Sick Call/Triage encounter performed at Health Services.

**SUBJECTIVE:**

**COMPLAINT 1**    **Provider:** Velazquez, Maria MLP

**Chief Complaint:** Back Pain

**Subjective:** 24 yr old male complaining of on-and-off upper back pain which started about 5 years ago. However, for the past 3-4 weeks the pain is worst. He claimed sharp pain and tenderness on the upper thoracic level. He claimed he is not able to sleep flat on his back because of the sharp pain. Prolonged sitting makes the pain worst. If he bends his neck forward shooting pain develops on his back.
He sleeps on his side his upper extremity becomes numb.
He denies muscle weakness, normal urine and bowel movement.

**Pain Location:** Back-Middle

**Pain Scale:** 8

**Pain Qualities:** Cramping | Sharp | Tender | Stabbing

**History of Trauma:**

**Onset:**

**Duration:**

**Exacerbating Factors:** Sleeping on his back.

**Relieving Factors:**

**Comments:**


**OBJECTIVE:**

**Exam:**
  **General**
    **Affect**
      Yes: Pleasant, Cooperative
    **Appearance**
      Yes: NAD, Alert and Oriented x 3, Appears in Pain
      No: Writhing in Pain, Appears in Distress
  **Musculoskeletal**
    **Shoulder**
      Yes: Normal Exam, Full Range of Motion
    **Spine-Thoracic**
      Yes: Full Range of Motion, Muscle Spasm, Tenderness
      No: Ecchymosis
  **Neurologic**
    **Motor System-General**
      Yes: Normal Exam, Normal Muscular Bulk, Normal Muscular Tone
      No: Involuntary Movements
    **Grip Strength C7/C8/T1**
      Yes: 5-Normal Muscle Strength

**ASSESSMENT:**

| Description | ICD9 | Status | Status Date | Progress | Type |
|---|---|---|---|---|---|

**Exhibit 47:**

**DVD of the Instant Offense (Sept. 19, 2010)**

**(PROVIDED SEPARATELY TO THE COURT)**